UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YOLANDA WILLIAMS DILLON                    CIVIL ACTION

VERSUS                                     NO. 15-7110

CAROLYN W. COLVIN, ACTING                  SECTION "B" (2)
COMMISSIONER OF SOCIAL SECURITY

## FINDINGS AND RECOMMENDATION

Plaintiff, Yolanda Williams Dillon, seeks judicial review pursuant to Section

405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner

of the Social Security Administration ("Commissioner"), denying plaintiff's claim for

disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. § 423.  This

matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)

and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Dillon filed her application for DIB on May 8, 2013, alleging disability since

February 17, 2012, due to lupus, fibromyalgia, arthritis and diabetes.[1]  (Tr. 200, 213,

227).  After her claims were denied at the agency level, plaintiff requested a hearing

before an Administrative Law Judge (ALJ), which was held on April 23, 2014.  (Tr. 86-

_____

[1]On February 16, 2012, the Commissioner denied Dillon's prior application for DIB based on
lupus, fibromyalgia and obesity with an alleged onset date of August 28, 2010, and the Appeals Council
denied review.  (Tr. 118-38).  That decision is res judicata and bars any claim of disability before
February 16, 2012.  42 U.S.C. § 405(h); Collins v. Colvin, 645 F. App'x 305, 306 (5th Cir. 2016)
(citations omitted); Hillman v. Barnhart, 170 F. App'x 909, 911 n.8 (5th Cir. 2006) (citation omitted).

117). The ALJ issued a decision denying the application on June 11, 2014. (Tr. 67-73).

After the Appeals Council denied review on October 30, 2015, the ALJ's decision

became the Commissioner's final decision for purposes of this court's review. (Tr. 1-6).

Plaintiff filed a timely memorandum in support of her appeal. Record Doc.

No. 15. Defendant filed a timely reply memorandum. Record Doc. No. 16.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The Appeals Council erred by failing to consider new and material evidence submitted after the ALJ's decision and to remand the matter for the ALJ to evaluate the new evidence.

B.    The ALJ erred by failing to consult a medical expert in determining whether Dillon's impairments medically equal Listing 14.02 for systemic lupus erythematosus.

C.    The ALJ's residual functional capacity assessment is not supported by substantial evidence.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.    Dillon meets the insured status requirements of the Act through March 31, 2014, and must establish disability on or before that date in order to be entitled to DIB.

2.    She has not engaged in substantial activity since the alleged onset date of February 17, 2012 through her date last insured of March 31, 2014.

3.    Through her date last insured, plaintiff had severe impairments consisting of lupus, a history of fibromyalgia, obesity, diabetes and hypertension.

4.    Through the date last insured, she did not have an impairment or combination of impairments that met or medically equaled the severity of

2

one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, specifically including Listing 14.02.

5.    Dillon has the residual functional capacity to perform light work, except that she can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme heat or cold.

6.    Her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

7.    Plaintiff can perform her past relevant work as a telephone solicitor.

8.    She was not under a disability from February 17, 2012, the alleged onset date, through March 31, 2014, the date last insured.

(Tr. 69-73).

IV.    ANALYSIS

    A.    Standards of Review

    The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  McCaskill v. Dep't of Health & Human Servs., No. 15-60304, 2016 WL 700220, at *4 (5th Cir. Feb. 22, 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2014).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[2]  Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue,

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

Dillon testified at the hearing that she was born in 1968, has a bachelor's degree in criminal justice and lives with her husband and two teenage daughters in a rented house in Bogalusa, Louisiana. She said that her husband works. She stated that she is 5 feet, 9 1/2 inches tall and weighs 346 pounds. (Tr. 91). She testified that her normal

weight was about 300 pounds, but that it fluctuates because she takes prednisone[3] and other medications, and she has weighed as much as 360 pounds.  Dillon said that her treating physician, Dr. Sedrish, has told her that her weight is a problem and she needs to lose weight, but he understands that weight fluctuations are normal when she is on steroids.

Plaintiff said she last worked as an unlicensed nurse's assistant in a behavioral health care unit for dementia and Alzheimer's patients for three years.  (Tr. 92).  She testified that she had previously worked for a home healthcare agency and a brain injury facility.  She stated that she had also worked as a telemarketer and a retail clothing store manager within the last 15 years.  She said she stopped working in 2010 because she was diagnosed with lupus and had so much pain and fatigue that she could not work regularly.  She stated that Dr. Sedrish treats her for lupus.

Dillon testified that her primary care physician, Dr. Hossein Tabari, treats her for arthritis, diabetes and high blood pressure.  (Tr. 93).  She stated that her medications for hypertension and diabetes are sometimes helpful.  She testified that these medications sometimes have to be adjusted, with increased dosages or a different drug, when she has a lupus flareup, after which she may return to her prior dosage or medication.  She

---

[3]Prednisone is a corticosteroid that prevents the release of substances in the body that cause inflammation and that suppresses the immune system.  It is used to treat conditions such as allergic disorders, skin conditions, arthritis, lupus, psoriasis and breathing disorders. Drugs.com (last updated Oct. 2016), https://www.drugs.com/prednisone.html (visited Nov. 3, 2016).

testified that the increased dosages of hypertension and diabetes medications help control those conditions when she has a lupus flareup. She said she takes oral medication, not insulin, for diabetes. (Tr. 94).

Plaintiff stated that her worst problem is pain from lupus and fibromyalgia, which prevents her from working. She said she wakes up "feeling horrible" some days. She stated that the pain feels like she is being twisted or like heavy bricks are on her and weighing her down. She testified that pain medication only works sometimes and that it makes her nauseous, weak and unable to sleep at night, making her very irritable or fatigued the next day.

Dillon said she sees Dr. Sedrish every three months for her lupus. She stated that she is worse when she has a flareup and she improves when she does not have a flareup. (Tr. 95). She described a flareup as feeling very fatigued, breaking out with a skin rash or having high blood pressure that causes more fatigue or excruciating pain in her joints and tendons, which feel like they are being twisted. She said a flareup occurs about twice a month.

Plaintiff could not explain what causes a flareup, but said she tries to control it by staying as stress-free as possible and always taking her medicine. She testified that her life causes her stress because only her husband is working and because she takes care of her house and children, tries to take care of herself so she will not have a flareup, and takes medication. (Tr. 96). She said she does not feel a flareup coming on, but knows

8

she has one when she is exhausted and can hardly get out of bed.  She stated that, during a flareup, she takes pain medication that makes her drowsy and dizzy, and rests as much as possible, which makes her more comfortable and allows the pain to subside.

Dillon said she takes Tramadol[4] for pain and ketorolac[5] for inflammation caused by arthritis and diabetes.  She stated that Tramadol works well for pain caused by lupus and that she takes both drugs when her pain is worse with inflammation.  She testified that she takes two pills of prednisone daily, but that her doctor may increase the dosage during a flareup.  (Tr. 97-98).

Plaintiff said she rests most comfortably in bed during a flareup, but sometimes rests in a recliner to elevate her knees and legs when they are throbbing.  She stated that a flareup usually lasts two to three weeks.  She said she has never gone to the emergency room or been hospitalized for a flareup because she has a good relationship with Dr. Sedrish.  She stated that he responds immediately when she calls him by increasing her medication dosage or adding vitamins, depending on the flareup's severity.  (Tr. 98-99).

Dillon testified that, during a flareup, she has very painful, itchy, red blisters on her skin for about two weeks, which scab over and cause scars and discoloration of her

---

[4]"Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain."  Drugs.com (last updated Nov. 2016), https://www.drugs.com/tramadol.html (visited Nov. 3, 2016).

[5]Ketorolac is a nonsteroidal anti-inflammatory drug used to relieve moderately severe pain. Ketorolac is sometimes used together with a narcotic to provide better pain relief than either medicine alone.  Mayo Clinic (1998-2016), http://www.mayoclinic.org/drugs-supplements/ketorolac-oral-route-injection-route/description/drg-20066882 (visited Nov. 3, 2016).

skin.  She said she uses a combination steroid cream, moisturizer and sunscreen for the blisters and always uses sunscreen when she goes outside because her skin is sensitive. She stated that she can scarcely wear clothing during these episodes and has to wear a very loose dress.  (Tr. 99).  She said she does not know what causes the rashes, which occur every four to five months.

Plaintiff stated that her exhaustion during flareups is tiring and painful.  She testified that rest sometimes calms her pain, but that at other times she can barely move and sometimes cannot get comfortable sitting, standing or lying down. (Tr. 100-01).  She said it might take 30 to 45 minutes to find a position in bed that calms the pain.

Dillon stated that her full-time job as a communication provider from 2000 to 2002 involved selling long distance telephone service and two-way pagers.  She said she was paid based on how many customers she signed up and how many devices she sold. She stated that she quit because she did not make enough money.  (Tr. 101, 115).  She testified that she could not perform that job now because she would be too irritable or fatigued and aching from lack of sleep, which makes it difficult to concentrate and to finish tasks on time.  (Tr. 101).

Plaintiff stated that she does laundry and cooks, but that sometimes her daughters must help because she has fatigue and numbness in her hands.  She said that her children help more now in that her oldest daughter goes to the grocery store for her or both daughters gather groceries throughout the store while plaintiff sits near the cashier and

waits for them.  She said she has pain in her lower back or calves after walking up and down two or three aisles.  She testified that her doctors have told her to lift no more than ten pounds.  She said she can sit for 20 to 30 minutes before she has to move to relieve pain in her lower back, joints and tendons.  (Tr. 103).

Dillon testified that she can tell when her blood pressure is high.  She said she feels dizzy and sees stars, lights or colored circles, so that she has to sit in a recliner with her head back and her legs elevated until it passes.  She stated that her medication usually or sometimes controls her blood pressure, depending on what is happening with her lupus, fibromyalgia, arthritis and diabetes, and that she notices her blood pressure is not under control about twice a week.  (Tr. 104-05).

Plaintiff stated that one of her main interests is her church, where she is the church clerk and in charge of the annual anniversary program.  She said she does not attend church every week as she used to do, but has only gone about twice a month in the last three years.  She stated that she needs more people to help her with the annual program because she gets confused sometimes and does not have as much energy as in the past. (Tr. 105-06).  She testified that her church is an hour from her house and that her oldest daughter usually drives her to church.  She said she does not need help being the clerk, which involves attending business meetings every other month and taking minutes.  (Tr. 106).  She stated that her assistant took over when she sometimes was too sick to go.

As for the annual event every March, Dillon testified that she used to make all the souvenirs, but now she just organizes the program because she gets fatigued and it takes longer for her to do things. She said she used to start working on the program each January, but now she starts in October or November to get people lined up, find speakers, choose a color scheme for the choir and ushers, work with the kitchen crew on the dinner menu and outline the program. (Tr. 107-08). She stated that "I do it all," which includes meetings at the church and calling other people to help her.

Plaintiff said that her typical day depends on how she feels when she gets up in the morning. (Tr. 108). She testified that, if she feels fatigued and sluggish or is in pain, she decides what to cook, whether her children will need to help her, and whether she has to do a little bit at a time. She stated that she does not do laundry and does not always cook, but that her daughters do those things. She said she does very light chores like folding clothes, cutting up vegetables or peeling potatoes, which she has to start early. (Tr. 109-10). She testified that she does not read anything except the Bible and sometimes reviews her daughters' school work with them, although she said she does not understand it.

Dillon stated that she helps her older daughter, who is a senior in high school, with things like the prom, senior portraits, school trips and preparing for college entrance exams. She testified that both children are in the chorus and must practice after school, but her older daughter drives a car to school on those days. Plaintiff said she sometimes

goes to chorus performances when she feels up to it, but had not attended any events recently. (Tr. 111). She stated that she had missed the Christmas musical and the Black History program because she felt fatigued and light-headed, and that music and sound sometimes make her feel worse. She said she watches a little television during the day and uses her cell phone to shop on the internet once or twice a week, because she cannot walk around in stores. (Tr. 112-13).

Plaintiff testified that her doctors told her to walk for exercise, but also to avoid sunshine as much as possible because of her lupus and because several of her medications prohibit prolonged sunlight exposure. (Tr. 113).

C.    Vocational Expert Testimony

A vocational expert, Thomas Meunier, Jr., testified at the hearing that plaintiff's former work as a nurse assistant was semi-skilled at a medium exertional level, while her telephone solicitor job was semi-skilled and sedentary. (Tr. 115). The ALJ posed a hypothetical of a person with the same age, education and work experience as Dillon, who can perform work at the light exertional level; frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; and should avoid concentrated exposure to extreme heat and cold. Meunier stated that such a person could perform plaintiff's past relevant work as a telephone solicitor as actually or generally performed.

The ALJ modified the hypothetical to add that the claimant would miss two days of work per month. Meunier stated that such an individual would not be able to maintain any employment while missing that much work. (Tr. 115-16).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 69-72). Although the administrative record in this case appears voluminous, it actually contains many duplicate medical records; substantial evidence from before plaintiff's alleged onset date of February 17, 2012, which was relevant to the Commissioner's denial of Dillon's prior DIB application for the time period from August 28, 2010 through February 16, 2012; and some evidence dated after the ALJ's opinion, which was submitted to the Appeals Council but not considered in the instant matter. I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The Appeals Council did not err by failing to consider new and material evidence submitted after the ALJ's decision.

Plaintiff argues that the Appeals Council erred by failing to consider new and material evidence she submitted after the ALJ's decision. The evidence consists of medical records from Dillon's treating physicians dated after the ALJ's June 11, 2014

14

opinion. (Tr. 8-54). The new records reveal that plaintiff also sought treatment on October 21, 2014 from a new rheumatologist, Carl Gauthier, Jr., M.D., who diagnosed systemic lupus erythematosus and fibromyalgia (Tr. 19-21), just as her previous treating rheumatologist, Phillip P. Sedrish, M.D., had done. On January 21, 2015, Dr. Gauthier completed a residual functional capacity checklist form based on plaintiff's single visit and his review of records from her previous rheumatology clinic. Dr. Gauthier opined on that form that Dillon can sit for only 15 minutes at a time for a total of three hours in an eight-hour work day; stand and/or walk for only 15 minutes at a time for a total of three hours in an eight-hour day; occasionally lift or carry no more than ten pounds; occasionally use either arm for reaching, handling and fingering; and rarely balance, crawl, bend, stoop, kneel or climb. He asserted that plaintiff needs to rest for more than four hours in an eight-hour work day to manage her pain and fatigue and must elevate both legs as needed for pain management. Dr. Gauthier opined that Dillon's conditions have persisted with these restrictions since at least February 17, 2012, her alleged onset date. (Tr. 15-17).

In denying review, the Appeals Council held that these records did not affect the ALJ's decision because they concerned a later time period. Plaintiff argues that all of the post-dated evidence was new and material; that Dr. Gauthier's opinion states that it related to the time period beginning on February 17, 2012; and that she had good cause for her failure to incorporate the evidence into the record before the ALJ's decision

because the evidence did not exist at that time.  She asks the court to remand the matter for the ALJ to evaluate the new evidence.

The Appeals Council did not err in this case.  When presented with new evidence, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence <u>only where it relates to the period</u> on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b).  Thus,

> [t]he Appeals Council is permitted to consider additional evidence only if it is new, material, and related to the period on or before the ALJ's hearing decision.  This court, in turn, may remand for the consideration of additional evidence only if it is <u>new and material, and if there is good cause for the claimant's failure to incorporate the evidence</u> into the record in a prior proceeding.

<u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); 20 C.F.R. §§ 404.970(b), 404.976(B); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)) (emphasis added).

This court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. <u>Id.</u>; <u>accord</u> <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314-15 (5th Cir. 2010); <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995)); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

"Evidence that was 'not in existence at the time of the administrative . . . proceedings, meets the "new" requirement for remand to the Secretary.'" Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quoting Haywood, 888 F.2d at 1471); accord Johnson v. Soc. Sec. Admin., 631 F. App'x 260, 262-63 (5th Cir. 2016) (citations omitted). However, "[e]vidence which is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)." Wilson v. Astrue, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987)) (emphasis added); accord Ferrari, 435 F. App'x at 314-15; Haynes v. Astrue, No. 11-2289, 2012 WL 3860467, at *3 (E.D. La. July 23, 2012), report & recommendation adopted, 2012 WL 3863171 (E.D. La. Sept. 5, 2012), aff'd, 519 F. App'x 258 (5th Cir. 2013).

New evidence must also be material to be the basis for a remand. The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383. The new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. Id.; Garson, 162 F. App'x at 303.

Further, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination."

17

Hunter, 283 F. App'x at 262 (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994)); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2007) (citing 28 U.S.C. § 405(g)).

Finally, "[t]o demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." Dennison v. Astrue, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing Pierre, 884 F.2d at 803; Skalij v. Chater, 103 F.3d 126, 1996 WL 731580, at *3 (5th Cir. 1996); accord Freeman v. Comm'r of Soc. Sec. Admin., No. 5:14-CV-49, 2015 WL 6549170, at *8 (E.D. Tex. Oct. 28, 2015) (citing Leggett, 67 F.3d at 567; Pierre, 884 F.2d at 803)); see also Mouser v. Astrue, 545 F.3d 634, 637 (8th Cir. 2008) ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing sufficient explanation.") (quotation and citation omitted).

Dillon "does not provide a satisfactory explanation for [the evidence's] absence from the initial proceedings." Leggett, 67 F.3d at 567.  She has proffered no explanation why she could not have obtained a residual functional capacity analysis from her treating physicians before the ALJ's decision.  Dr. Sedrish, her rheumatologist, diagnosed her with lupus and fibromyalgia as early as February 2011 and continued to do so into March 2014.  (Tr. 343-45, 348, 562).  The mere "fact that evidence is 'new', meaning that it did not exist at a point in time such that it could have been incorporated into the

18

administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence into the administrative record." <u>Wilson</u>, 2009 WL 2341803, at *4 (citing <u>Pierre</u>, 884 F.2d at 803). An opinion like Dr. Gauthier's could have been obtained "at any time. [Plaintiff] has not offered good cause why the [residual functional capacity evaluation] was not performed earlier." <u>Pierre</u>, 884 F.2d at 804.

Even if Dillon had demonstrated good cause to supplement the record with records post-dating the ALJ's opinion, which she has not, she has failed to show that these reports are material, as defined by the Fifth Circuit, for the following reasons. First, the relevant time period to establish disability is from plaintiff's alleged onset date of February 17, 2012 through March 31, 2014, the date she was last insured, or, at the latest, the date of the ALJ's decision on June 11, 2014. The new records are dated from three to ten months <u>after</u> the date last insured and from one to eight months <u>after</u> the ALJ's decision. Because they do not relate to the period for which benefits were denied, the records are immaterial. <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 338 (5th Cir. 2008) (citing 20 C.F.R. § 404.1502); <u>Sanchez v. Barnhart</u>, 75 F. App'x 268, 270 (5th Cir. 2003) (citing <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)).

Second, the evidence is not material because plaintiff has failed to demonstrate a reasonable possibility that it would change the outcome of the Commissioner's determination. When Dr. Gauthier completed his residual functional capacity checklist opinion on January 21, 2015, seven months <u>after</u> the ALJ's decision and almost ten

months <u>after</u> Dillon's date last insured, he had seen plaintiff only once on October 21, 2014.    Thus, he was <u>not</u> a treating physician as defined by the Commissioner's regulations and his opinion would <u>not</u> be accorded the controlling weight usually given to treating physicians.    <u>Hernandez</u>, 278 F. App'x at 338 n.4 (citing 20 C.F.R. § 404.1502); <u>Clayborne v. Astrue</u>, 260 F. App'x 735, 737 (5th Cir. 2008) (same); <u>Swan v. Colvin</u>, No. 15-60-JWD-EWD, 2016 WL 5429669, at *11 (M.D. La. Aug. 30, 2016), <u>report & recommendation adopted</u>, 2016 WL 5478001 (M.D. La. Sept. 27, 2016) (citing <u>Clayborne</u>, 260 F. App'x at 737; <u>Taylor v. Astrue</u>, 245 F. App'x 387, 391 (5th Cir. 2007); <u>Hernandez v. Heckler</u>, 704 F.2d 857, 860-61 (5th Cir. 1983)).

Dillon argues that Dr. Gauthier found that her functional limitations existed as of February 27, 2012, her alleged onset date, which would likely change the outcome, if the retrospective opinion were accepted.

> While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status.  Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability <u>absent evidence of an actual disability during the time of insured status</u>.

<u>McLendon v. Barnhart</u>, 184 F. App'x 430, 432 (5th Cir. 2006) (citing <u>Likes v. Callahan</u>, 112 F.3d 189 (5th Cir. 1997); <u>Ivy v. Sullivan</u>, 898 F.2d 1045 (5th Cir. 1990)) (emphasis added).  While retrospective medical diagnoses may constitute relevant evidence of the onset date of disability, they must at least be corroborated by evidence relating back to

the claimed period of disability.  Luckey v. Astrue, 458 F. App'x 322, 326-27 (5th Cir. 2011) (citing Likes, 112 F.3d at 191).  The ALJ found that Dillon had severe impairments of lupus, a history of fibromyalgia, obesity, diabetes and hypertension, but that the entirety of the evidence did not support her allegations of functional limitations that would prevent her from performing her past relevant work. Nothing in the new evidence, including Dr. Gauthier's checklist form opinions, suggests that any of Dillon's previously diagnosed impairments is the type of condition that follows such a well-known progression that a date of disability can be inferred after the fact without contemporaneous corroboration.  Cohen v. Astrue, 258 F. App'x 20, 2007 WL 4437229, at *8 (7th Cir. 2007) (citing Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006)).

In addition to the possible lack of controlling weight that would be afforded to Dr. Gauthier's opinions as a non-treating physician, appellate courts, including the Fifth Circuit, have often held that checklist opinions like his are unworthy of credence when, as in the instant case, they are not adequately supported by or are inconsistent with the medical records.  "[T]he questionnaire format typifies brief or conclusory testimony. . . . [W]e agree with the magistrate judge's conclusion that due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the physician's checklist] opinion is given little weight." Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (quotations omitted); accord Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001); Johnson

21

v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).

Finally, all of the new evidence is merely cumulative of the medical records from plaintiff's treating physicians during the relevant time period that the ALJ already considered. The new evidence therefore does not supply a basis for remand. Whitehead v. Colvin, 820 F.3d 776, 780 (5th Cir. 2016) (citing Sun v. Colvin, 793 F.3d 502, 511 (5th Cir. 2015)); accord Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1983) (citing 20 C.F.R. § 404.970(b)).

The ALJ has sole responsibility for determining a claimant's residual functional capacity and disability status. Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012); Hernandez, 278 F. App'x at 337 (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990). The ALJ in the instant case fully considered and weighed all of the relevant evidence, not just the medical opinions, and explained the weight he gave to the evidence and his reasons for his decision. Dillon has not shown a reasonable possibility that the new evidence would change that result. Accordingly, this assignment of error lacks merit.

2.    The ALJ was not required to consult a medical expert to determine
whether Dillon's impairments medically equal Listing 14.02.

The ALJ accorded "great weight" to the opinions of internist Anthony Scardino, M.D., a medical consultant who reviewed plaintiff's medical records and opined on October 21, 2013 that she did not meet any listing and was capable of a restricted range of light work. (Tr. 71-72, 147-48). The ALJ found at the third step of the sequential evaluation that Dillon did not meet or medically equal Listing 14.02 for systemic lupus erythematosus because the medical evidence revealed that she had "a virtually normal review of symptoms, including no reported constitutional symptoms," when seen by her primary care physician on July 29, 2013, and she did not exhibit the required "severe constitutional signs and findings on a consistent basis" during the relevant time period. (Tr. 71). Plaintiff argues that the ALJ erred by finding that her conditions do not medically equal Listing 14.02, without having obtained an updated medical expert opinion that considered the medical evidence that post-dated Dr. Scardino's opinions, including Dr. Gauthier's opinions.

Listing 14.02 defines systemic lupus erythematosus as

a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). . . . Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.00(D)(1). Major organ or body system involvement can include respiratory, cardiovascular, renal, hematologic, skin, neurologic, mental or immune system disorders. Id. Listing 14.02(A) requires that a claimant's condition meet this description, with:

> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

Id. § 14.02(A).[6] Dillon argues that she has chronic kidney disease in addition to her chronic skin condition, thus involving two body systems, and that she at least has severe fatigue and malaise.

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL

---

[6]Dillon does not appear to argue that she meets or medically equals Listing 14.02(B), which requires

> B. Repeated manifestations of SYSTEMIC LUPUS ERYTHEMATOSUS, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Id. § 14.02(B).

5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009). "The

specified medical criteria [of a listing] are designed to be demanding and stringent

because they lead to a presumption of disability[,] making further inquiry unnecessary."

Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex.

July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex.

July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco v. Shalala, 27

F.3d 160, 162 (5th Cir. 1994)).

> For a claimant to qualify for benefits by showing that his unlisted
> impairment, or combination of impairments, is "equivalent" to a listed
> impairment, he must present medical findings equal in severity to all the
> criteria for the one most similar listed impairment. 20 CFR § 416.926(a)
> (1989) (a claimant's impairment is "equivalent" to a listed impairment "if
> the medical findings are at least equal in severity" to the medical criteria for
> "the listed impairment most like [the claimant's] impairment");[7] SSR
> 83-19, at 91 (a claimant's impairment is "equivalent" to a listing only if his
> symptoms, signs, and laboratory findings are "at least equivalent in severity
> to" the criteria for "the listed impairment most like the individual's
> impairments(s); when a person has a combination of impairments, "the
> medical findings of the combined impairments will be compared to the
> findings of the listed impairment most similar to the individual's most
> severe impairment"). A claimant cannot qualify for benefits under the
> "equivalence" step by showing that the overall functional impact of his
> unlisted impairment or combination of impairments is as severe as that of
> a listed impairment. SSR 83-19, at 91-92 ("[I]t is incorrect to consider
> whether the listing is equaled on the basis of an assessment of overall
> functional impairment. . . . The functional consequences of the
> impairments . . . irrespective of their nature or extent, cannot justify a
> determination of equivalence") (emphases in original).

---

[7]As of June 13, 2011, 20 C.F.R. § 416.926(a) reads: "Your impairment(s) is medically equivalent
to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed
impairment."

Zebley, 493 U.S. at 530-32 (footnotes omitted); accord Selders, 914 F.2d at 619. The ALJ has the responsibility for deciding medical equivalence. 20 C.F.R. § 404.1526(e).

Thus, Dillon must identify specific medical evidence demonstrating that she medically equals all the criteria of Listing 14.02, but has failed to do so. As discussed in the preceding section of this report and recommendation, the new evidence submitted to the Appeals Council is not material, is not reasonably likely to change the outcome of the ALJ's decision and cannot form the basis for a remand.

Citing Social Security Ruling ("SSR") 96-6p,[8] Dillon argues that the ALJ was required to order an updated medical expert opinion when additional medical evidence was received into the record after Dr. Scardino provided his opinion. This argument is contradicted by the plain language of SSR 96-6p, which states that an ALJ or the Appeals Council

> must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6P, 1996 WL 374180, at *4 (July 2, 1996) (footnote omitted) (emphasis added).

---

[8]The Commissioner's rulings bind the ALJ, but do not have the force of law. Although SSRs "are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'" Bryant v. Astrue, 272 F. App'x 352, 356 (5th Cir. 2008) (quoting Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001)); accord Ramirez v. Colvin, 606 F. App'x 775, 778 (5th Cir. 2015).

Contrary to Dillon's argument, SSR 96-6P grants the ALJ discretion in these circumstances. <u>Dickerson v. Colvin</u>, No. 5:14-CV-9-DCB-MTP, 2015 WL 5334287, at *13 (S.D. Miss. Sept. 14, 2015) (citing <u>Haywood</u>, 888 F.2d at 1467-68; <u>Thomas v. Astrue</u>, No. 6:07-CV-053-C, 2009 WL 2777867, at *4-5 (N.D. Tex. Aug. 31, 2009)); <u>Hightower v. Colvin</u>, No. 4:15-CV-00091, 2015 WL 4887621, at *11 (S.D. Tex. Aug. 17, 2015) (citing 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii)); <u>Malone v. Colvin</u>, No. H-13-3043, 2015 WL 1291824, at *14 (S.D. Tex. Mar. 16, 2015) (citing <u>Haywood</u>, 888 F.2d at 1467-68; <u>Ybarra v. Colvin</u>, No. H-13-3720, 2015 WL 222330, at *7 n.5 (S.D. Tex. 2015); 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii)). The ALJ in the instant case noted that Dr. Scardino had considered "nearly the entire extant record" and that "there is no subsequent, substantially contravening evidence" in the record after Dr. Scardino rendered his opinion on October 21, 2013. (Tr. 72).

The medical evidence that post-dates Dr. Scardino's opinion and pre-dates the ALJ's decision substantially confirms these conclusions. The reports of examinations by Dr. Sedrish and Daniel Tveit, M.D., a nephrologist, in December 2013, January 2014 and March 2014 note that Dillon had many of the same complaints as before, but was generally doing well with minimal symptoms or findings on physical examination. (Tr. 531- 34, 541-43, 562-63). Thus, the ALJ was not required to obtain an updated medical expert opinion. Accordingly, this assignment of error lacks merit.

3.    Substantial evidence supports the ALJ's residual functional capacity
assessment.

The ALJ found that Dillon has the residual functional capacity to perform light

work, except that she can frequently climb ramps and stairs; only occasionally climb

ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme heat or

cold.  Plaintiff argues that this finding is not supported by substantial evidence.  She

contends that the ALJ improperly substituted his judgment for that of Dillon's treating

rheumatologist when the ALJ stated that the "record does not show that [plaintiff] had

received the highest level of care for her illness, but merely that she takes maintenance

doses of prednisone and some pain relievers–a relatively conservative level of care."

(Tr. 72).  Dillon characterizes her treatment as aggressive, rather than conservative.

The ALJ's residual functional capacity findings are supported by substantial

evidence.  He acknowledged that Dillon's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but he found that her

statements concerning the intensity, persistence and limiting effects of her symptoms

were not entirely credible.

The mere diagnosis of and treatment for an impairment does not establish a

claimant's disability claims.  Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008)

(citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon, 184 F. App'x

at 431; Harris v. Barnhart, 65 F. App'x 129, 132 (9th Cir. 2003); Estok v. Apfel, 152

28

F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991);

Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Martin

v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing

Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)).   "If a claimant has a

degenerative or ongoing impairment, the relevant inquiry is whether the claimant was

actually disabled during the relevant time, not whether a disease existed that ultimately

progressed to a disabling condition." McLendon, 184 F. App'x at 431.  Plaintiff "'must

show that she was so functionally impaired [by her diagnosed impairment] that she was

precluded from engaging in any substantial gainful activity.'"  Bordelon, 281 F. App'x

at 422 (quoting Hames, 707 F.2d at 165) (emphasis added); accord Taylor, 706 F.3d at

603; Randall v. Astrue, 570 F.3d 651, 658-59 (5th Cir. 2009); Anthony v. Sullivan, 954

F.2d 289, 293 (5th Cir. 1992); Hamauei v. Astrue, No. 10-85, 2011 WL 802398, at *7

(E.D. La. Feb. 28, 2011) (quoting Hames, 707 F.2d at 165).

        The ALJ did not substitute his judgment for that of plaintiff's treating specialist.

        The record indicates that the ALJ used the medical information provided
        by [plaintiff] to determine the plaintiff's residual functional capacity for
        work.   Under the regulations and our case law, the determination of
        residual functional capacity is the sole responsibility of the ALJ.  What
        [plaintiff] characterizes as the ALJ substituting his opinion is actually the

> ALJ properly interpreting the medical evidence to determine [plaintiff's] capacity for work.

Taylor, 706 F.3d at 602-03 (citing Ripley, 67 F.3d at 557); accord Jack v. Astrue, 426 F. App'x 243, 245 (5th Cir. 2011).

"It is the ALJ's responsibility to determine a claimant's [residual functional capacity], and such an assessment is not a medical opinion." Joseph-Jack v. Barnhart, 80 F. App'x 317, 318 (5th Cir. 2003) (citing 20 C.F.R. §§ 416.946, 416.927(e)). "And the ALJ is 'entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" Williams v. Colvin, 575 F. App'x 350, 354 (5th Cir. 2014) (quoting Greenspan, 38 F.3d at 237).

Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. Luckey v. Astrue, 458 F. App'x 322, 326 (5th Cir. 2011) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462. The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [his] articulation.'" Hernandez, 278 F. App'x at 339 (quoting Falco, 27 F.3d at 164). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's

credibility evaluation is entitled to <u>considerable deference</u> by this court.  <u>McKnight v. Astrue</u>, 340 F. App'x 176, 181 (5th Cir. 2009) (citing <u>Newton</u>, 209 F.3d at 459); <u>Bedford v. Astrue</u>, 236 F. App'x 957, 962 (5th Cir. 2007) (citing <u>Newton</u>, 209 F.3d at 459).  The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required.  <u>Undheim v. Barnhart</u>, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); <u>Falco</u>, 27 F.3d at 164); <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 163); <u>Godbolt v. Apfel</u>, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).  The ALJ in the instant case followed these principles, explaining that the medical records, which he accurately summarized, did not substantiate that Dillon experienced problems as serious as she testified and the records include objective findings on examination indicating that she did not have such severe limitations.  (Tr. 72).

    The ALJ accorded "great weight" (Tr. 72) to Dr. Scardino's opinions (Tr. 147-48), which, as previously discussed, are substantially supported by the medical evidence. "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i).  "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence."  <u>Alejandro v. Barnhart</u>, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§

404.1527(f)(2)(i), 416.927(f)(2)(i)); <u>accord</u> <u>Butler v. Barnhart</u>, 99 F. App'x  559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)).

The ALJ incorporated in plaintiff's residual functional capacity determination all of the symptoms and functional limitations that he found credible, based on the entire record and especially on Dr. Scardino's opinions, which are not contradicted by the medical evidence.  The ALJ applied the proper legal principles in evaluating plaintiff's residual functional capacity and reached a conclusion that is supported by substantial evidence.  Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The Appeals Council did not err by failing to consider new evidence that was not material and as to which plaintiff failed to show good cause for submitting it after the ALJ's decision.  The ALJ was not required to consult a medical expert to determine whether Dillon's impairments medically equal Listing 14.02.  The ALJ applied appropriate legal standards to make his residual functional capacity findings, which are supported by substantial evidence.

**<u>RECOMMENDATION</u>**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this ___9th___ day of November, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.