**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **YOLANDA WILLIAMS DILLON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-7110** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "B"** |

**ORDER AND REASONS**

Before the Court are Plaintiff Yolanda Dillon's ("Dillon") timely objections to the Magistrate Judge's Report and Recommendation ("Report"). Rec. Doc. 18. Dillon seeks review of the Social Security Administration Commissioner's (the "Commissioner") final decision, denying her claim for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 405(g). Rec. Doc. 17. For the reasons outlined below,

**IT IS ORDERED** that the Report is **ADOPTED**;

**IT IS FURTHER ORDERED** that objections to the same are **OVERRULED**; and

**IT IS FURTHER ORDERED** that Dillon's claims are **DISMISSED WITH PREJUDICE.**

**PROCEDURAL HISTORY**

On May 8, 2013, Dillon filed an application for a period of disability and DIB under Title II of the Social Security Act (the "Act"), alleging a disability as of February 17, 2012. Rec. Doc. 13-2 at 68.

1

On October 21, 2013, Dillon's claim was denied by Anthony Scardino, M.D. Rec. Doc. 13-3 at 34. Dillon filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was held on April 23, 2014. Rec. Doc. 13-2 at 68. Dillon, who was represented by counsel, and an impartial vocational expert, Mr. Thomas Meunier, Jr., testified at the hearing. *Id.* at 68, 74.

On June 11, 2014, the ALJ issued a decision in which he found that Dillon was not disabled through March 31, 2014, the last day she was insured. Rec. Doc. 13-2 at 74. The ALJ went through a five-step sequential evaluation established by the Social Security Administration ("SSA") to determine whether Dillon is disabled. *Id.* at 68.[1] He considered several impairments to determine Dillon's residual function capacity ("RFC"), including her level III obesity, lupus, diabetes, hypertension, and fibromyalgia. *Id.* at 70-71. Ultimately, the ALJ determined that Dillon had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) except: she can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds; and she must avoid concentrated exposure to extreme heat or cold." *Id.* at 72. Based on these findings, the ALJ found that Dillon was capable of

---

[1] The five-step sequential evaluation process considers whether: (1) claimant is gainfully employed, (2) claimant has a severe impairment(s), (3) the impairment(s) meets criteria of any Social Security Income listings, (4) the impairment(s) prevents claimant from performing past relevant work, and (5) the impairment(s) necessarily prevents claimant from doing any other work. 20 C.F.R. § 404.1520(a)(4)(i-v).

performing past relevant work as a telephone solicitor. *Id.* at 73-74. Thus, the ALJ concluded that Dillon was not disabled, as defined by the Act, at any time from February 17, 2012 through March 31, 2014. *Id.* at 74.

After the ALJ denied Dillon's application for DIB, Dillon sought review by the Appeals Council ("AC"). Rec. Doc. 13-2 at 2. On October 30, 2015, the AC denied the appeal and rendered the ALJ's decision the final decision of the Commissioner. *Id.*

On December 28, 2015, Dillon filed a complaint in this Court seeing judicial review pursuant to 42 U.S.C. § 405(g). Rec. Doc. 1. The SSA and Dillon timely filed memoranda of law and facts. Rec. Docs. 15-16. On November 9, 2016, the Magistrate Judge recommended that Dillon's complaint be dismissed with prejudice. Rec. Doc. 17 at 32.

**FACTS OF THE CASE**

**1. Plaintiff's Testimony**

Dillon testified at the ALJ hearing that she was born on February 26, 1968 and was forty-eight (48) years old. Rec. Doc. 13-2 at 92. She has a bachelor's degree in criminal justice from Gravel State University and lives with her husband and two daughters. *Id.* She is 5 feet, 9 1/2 inches tall and weighed 346 pounds at the time of the April 23, 2014 hearing. *Id.* at 92-93.

Dillon testified that her last full-time work was in 2010 at a behavioral care unit as an unlicensed nurse's assistant to

dementia and Alzheimer's patients. Rec. Doc. 13-2 at 93. Prior to serving full-time as a nurse's assistant, Dillon worked for a home healthcare agency and brain injury facility, as a telemarketer, and as a retail clothing store manager at various times during the last fifteen (15) years. *Id.* at 93-94. Dillon stopped working in 2010 due to her lupus and extreme pain and fatigue. *Id.* Dr. Phillip Sedrish is currently treating her lupus. *Id.*

Dillon testified that her primary care physician, Dr. Hossein Tabari, treats her for arthritis, diabetes, and high blood pressure. Rec. Doc. 13-2 at 94. She testified that her hypertension and diabetes medications sometimes have to be adjusted, when she has a lupus flare up. *Id.* at 95.

Dillon explained that her worst problem is the pain from her lupus and fibromyalgia, which prevents her from working. Rec. Doc. 13-2 at 95-96. She testified that pain medication only works sometimes and that it makes her nauseous, weak, and unable to sleep, making her irritable and fatigued. *Id.* at 96.

Dillon sees Dr. Sedrish every three months for her lupus. Rec. Doc. 13-2 at 96. When her lupus flares up, she feels fatigued, breaks out with a skin rash, and experiences high blood pressure. *Id.* at 97. She said a flare up occurs about twice a month. *Id.* Dillon could not explain what causes a flare up, but said she tries to control it by staying as stress-free as possible and always taking her medicine. *Id.* Dillon said she takes Tramadol for pain

4

and Ketorolac for the inflammation caused by her arthritis and diabetes. *Id.* at 98. She also takes two pills of prednisone daily. *Id.* at 98-99. She stated that a flare up usually lasts two to three weeks, but that she has never been hospitalized for a flare up. *Id.* at 99-100.

### 2. Vocational Expert Testimony

Mr. Meunier testified at the ALJ hearing that Dillon's work as a nurse assistant was semi-skilled at a medium exertional level, while her work as a telephone solicitor was semi-skilled and sedentary. Rec. Doc. 13-2 at 116. The ALJ asked the expert if an individual, with the same age, education, work experience, and RFC as Dillon, could perform any of Dillon's prior jobs. *Id.* at 116-17. Mr. Meunier stated that such a person could perform Dillon's past relevant work as a telephone solicitor. *Id*. Subsequently, the ALJ modified the hypothetical to add whether such a person could perform Dillon's prior jobs while missing two days of work per month. *Id.* at 117. Mr. Meunier stated that such an individual would not be able to maintain any employment with two unscheduled absences per month. *Id*.

### 3. Medical Evidence

After the ALJ's opinion was issued, Dillon submitted new medical evidence to the AC, which did not consider it. Rec. Doc. 13-2 at 3. Specifically, the new evidence indicates that Dillon sought treatment on October 21, 2014 from a new rheumatologist,

5

Carl Gauthier, Jr., M.D., who diagnosed Dillon with systematic lupus erythematosus and fibromyalgia. *Id.* at 18. On January 21, 2015, Dr. Gauthier completed a RFC assessment based on Dillon's single visit and her medical records. *Id.* at 16-18, 20. Dr. Gauthier opined that Dillon can sit for only 15 minutes at a time for a total of three hours in an eight-hour work day; stand and/or walk for only 15 minutes at a time for a total of three hours in an eight-hour work day; occasionally lift or carry no more than ten pounds; occasionally use either arm for reaching, handling, and fingering; but rarely balance, crawl, bend, stoop, kneel, or climb. *Id.* at 16-18. Dr. Gauthier also stated that Dillon needs to rest for more than four hours in an eight-hour work day to manage her pain and fatigue and must elevate both legs as needed for pain management. *Id.* at 18. He opined that Dillon's conditions have persisted with these restrictions since at least February 17, 2012, her alleged onset date. *Id.*

**STANDARD OF REVIEW**

The function of this Court on judicial review is limited to determining whether (1) substantial evidence exists in the record to support the Commissioner's final decision; and (2) whether the Commissioner applied the appropriate legal standard when evaluating the evidence. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005)(citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla but less

than a preponderance, and is relevant and sufficient evidence for a reasonable mind to accept it as adequate to support a conclusion. *Id.* (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)(quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000))).

Findings by the Commissioner which are supported by substantial evidence are conclusive and must be affirmed. 42 U.S.C. § 405(g). Such findings must be affirmed despite alternative conclusions which this Court might also find to be substantially supported by the evidence. *Ark. v. Okla.,* 503 U.S. 91, 112-13 (1992). This Court may not try the issues *de novo,* re-weigh the evidence in the record, or substitute its own judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton,* 209 F.3d at 452 (citing *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999)). The obligation to resolve conflicts in the evidence is one for the Commissioner, not for the courts. *Id.* (citing *Brown*, 192 F.3d at 496(quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990))).

This Court weighs "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995)(citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

7

Before the Court may affirm the ALJ's decision, the Court must scrutinize the record and take into account anything that fairly detracts from the substantiality of the evidence supporting the Commissioner's findings. *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985)(quoting *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984))(other citations omitted). The Court may remand: (1) for additional evidence if substantial evidence is lacking; or (2) upon a showing there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record previously. *See* 42 U.S.C. § 405(g); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994).

**FINDINGS**

**1. Consideration of New Evidence**

Dillon asserts that the AC and Magistrate Judge erred by failing to consider additional medical evidence, specifically new records from Dr. Gauthier's RFC assessment. Rec. Doc. 18 at 11.

For this Court to remand, additional evidence must meet three criteria: (1) it must be new, and not merely cumulative of what is already in the record; (2) it must be material, *i.e.,* relevant, probative, and likely to change the outcome of the case; and (3) "the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)(citing *Szubath v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d

Cir. 1984); *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)).

Dillon argues that because Dr. Gauthier's RFC assessment is the first such assessment in the record, it should satisfy the "new" requirement. Rec. Doc. 18 at 8. "Evidence that was 'not in existence at the time of the administrative and district court proceedings, meets the 'new' requirement for remand to the Secretary.'" *Hunter v. Astrue*, 283 F. App'x 261, 262 (5th Cir. 2008)(quoting Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)). However, "[e]vidence which is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)." *Wilson v. Astrue*, No. 08-1392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009)(citations omitted). While Dr. Gauthier's RFC assessment is the first such assessment in the record, it merely confirms the diagnosis of the underlying illnesses of systemic lupus erythematosus and fibromyalgia. Rec. Doc. 18 at 8. Consequently, this portion of the RFC assessment is cumulative and does not satisfy the "new" requirement of 20 C.F.R. § 404.970(b).

Dillon then argues that the objective medical evidence in Dr. Gauthier's RFC assessment, which describes the severity of the underlying illnesses, should be considered new and material evidence. Rec. Doc. 18 at 8. In the RFC assessment, Dr. Gauthier opined that Dillon is required to rest for more than four hours in

9

an eight hour work day to manage her pain and fatigue. Rec. Doc. 13-2 at 16.

Again, evidence is "new" if it is not duplicative or cumulative. 20 C.F.R. § 404.970(b). Here, the opinion that Dillon must rest for four hours during an eight-hour work day, is "new" evidence—especially in light with the ALJ's ruling:

> "In terms of the claimant's alleged disability symptoms and limitations, including fatigue, malaise, weakness, and pain, the undersigned observes that she spoke at length and with significant emotion at the hearing regarding all the activities she now cannot perform, or must, at a minimum curtail, because her multiple conditions render her unable to sustain work-like activities. The undersigned would look upon such allegations as more credible if the record had included any reports in which the claimant was shown to have reported to a source of medical treatments that she was experiencing problems of such a grave nature, and sought treatment as would have rendered her better able to function...[t]he medical reports – including the recent primary care report from Dr. Mendoza showing no objective finding of great concern, and even no significant abnormal symptoms reported by claimant – cast grave doubts upon the extent of limitations alleged by the claimant in the hearing, outside the context of a doctor's office...[t]he undersigned considers her allegations to be only partially credible."

Rec. Doc. 13-2 at 72-73. In reaching his conclusion, the ALJ highlighted the lack of objective medical evidence in the record regarding the severity of the diagnoses, which Dr. Gauthier's opinion appears to address by indicating that Dillon would need to rest for more than half of an eight-hour work day. *Id.*

In addition to being "new," the additional medical evidence must also be "material" to serve as grounds for a remand. 42

10

U.S.C.A. § 402(g). "Within the materiality requirement is a temporal element that the evidence '... relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Murphy v. Colvin*, No. 14-1110, 2015 WL 5060131, at *5 (E.D. La. Aug. 25, 2015)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987)). The new evidence "must thus relate to the time period on or before the date of the ALJ's hearing decision." *Id.* (citing Martinez *v. Astrue,* 252 F. App'x. 585, 587 (5th Cir. 2007) (citing 20 C.F.R. § 404.976(b))).

Additionally,

> [w]hile a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status. Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status."

*McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006). In this case, the relevant time period is from Dillon's alleged disability onset date on February 17, 2012, through the date of the ALJ's decision, June 11, 2014. Rec. Doc. 13-2 at 70. Even though the new evidence was submitted nine months after the date last insured and seven months after the ALJ's decision, Dr. Gauthier explicitly refers to the relevant time period on or before

11

the ALJ hearing decision in his RFC assessment: "[t]he patient's condition existed and persisted with restrictions as outlined in this Medical Source Statement at least since February 17, 2012." Rec. Doc. 13-2 at 18.

Furthermore, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination." *Latham,* 36 F.3d at 483 (quoting *Chaney v. Schweinker,* 659 F.2d 676, 679 (5th Cir. 1981)). Dillon argues that the ALJ is required to give preference to the examining specialist, Dr. Gauthier, over a non-examining generalist, Dr. Scardino. Rec. Doc. 18 at 9. She therefore argues that there is a reasonable possibility that the new evidence would change the ALJ's decision. *Id.*

The ALJ must give controlling weight to the opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 176 (quoting 20 C.F.R. § 404.1527(d)(2)). The Regulations also contain a general rule that greater weight should be given to the medical opinions of treating sources because they are "more likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). Further, opinions of specialists about medical issues related to his or her area of

specialization are given more weight in disability benefits proceedings than opinions of nonspecialists. 20 C.F.R. § 404.1527(d)(5).

In this case, the ALJ gave "great weight" to the opinion of Dr. Scardino, a state agency medical consultant, when evaluating Dillon's physical and mental impairments. Rec. Doc. 13-2 at 72-73. Dillon contends that the Commissioner would have to give Dr. Gauthier's opinion greater deference because he is Dillon's treating physician and a specialist. Rec. Doc. 18 at 9. However, the submitted records show that Dr. Gauthier saw Dillon only once, which means that Dr. Gauthier is not a treating physician and his opinion would not be accorded the controlling weight usually given to treating physicians.[2] *Washington v. Astrue*, No. 08-5209, 2009 WL 4927677, at *14 (E.D. La. Dec. 21, 2009) (where the court concluded that a doctor who examined the plaintiff only once was not a treating physician) (citing 20 C.F.R. § 404.1502).

Additionally, although

> [t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist . . . the ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion... The opinions may be assigned little or no weight when good cause is shown. Good cause may permit

---

[2] The Regulations define a "treating" physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. Given that Dr. Gauthier examined Dillon only once, after the insured period, they did not have an ongoing treatment relationship.

13

> an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton,* 209 F.3d at 455-56 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994) *overruled by Sims v. Apfel*, 530 U.S. 103, 120 (2000)) (citing *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)) (internal quotation marks omitted). Dr. Gauthier opines that Dillon must rest for more than four hours in an eight-hour work day, which is significant time missed—especially in light of the ALJ's modified hypothetical where Mr. Meunier stated that such an individual would not be able to maintain any employment with two unscheduled absences per month. Taking into consideration the above facts, it appears that there is a reasonable possibility that Dr. Gauthier's opinion would have been reviewed by the ALJ. However, the mere diagnosis of an impairment is insufficient, in itself, to sustain a finding of disability. 20 C.F.R. § 416.925(d). Dillon "must show that she was so functionally impaired by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity." *Tate v. Colvin*, No. 13-6552, 2014 WL 4982662, at *10 (E.D. La. Oct 6, 2014) (quoting *Martin v. Chater*, No. 95-0245, 1995 WL 505955, at *6 (N.D. Ill. Aug 23, 1995)); *accord Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). Thus, Dillon's rest requirement of four hours in an eight-hour work day, even if

originally manifested during the relevant time period between Dillon's alleged onset date and the ALJ's decision, does not by itself require a finding of disability. Dillon does not explain how this objective medical information causes specific functional impairments that would prevent Dillon from working a limited range of light work. Dillon has not demonstrated a reasonable possibility that the new evidence would change the outcome of the Commissioner's decision.

Further, even if the additional evidence is both "new and material evidence," Dillon has not established "good cause" for her failure to incorporate this evidence into the record prior to the ALJ's decision. The Court can remand a case to the Commissioner and order consideration of additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Latham,* 36 F.3d at 483 (quoting 42 U.S.C. § 405(g)). "To demonstrate good cause, the plaintiff must provide an excusable explanation for not submitting the records earlier in the proceeding." *Dennison v. Astrue*, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. March 1, 2010) (citations omitted). The mere fact that a medical report is of recent origin is not sufficient to show good cause if plaintiff could have timely obtained such a record and submitted it to the Commissioner. *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citations omitted).

Here, Dillon argues that (1) the treatment with Dr. Gauthier began after the hearing; and (2) her prior rheumatologist did not write letters regarding disability. Rec. Doc. 18 at 11. Dillon's first argument is meritless. *See Leggett*, 67 F.3d at 567 (where the court concluded that a medical examination conducted after the ALJ's decision, alone, is not sufficient to warrant a remand). Moreover, the fact that Dillon's prior rheumatologist refused to write a disability letter indicates that the rheumatologist did not believe that Dillon was disabled; at the very least, Dillon should have obtained another doctor's opinion before the ALJ hearing. Because Dillon had every opportunity to gather a medical opinion similar to Dr. Gauthier's, she did not have "good cause" for her failure to timely submit similar evidence. Accordingly, Dillon's objection regarding new evidence is overruled.

**2. Substantial Evidence**

In Dillon's second objection, she contends that the ALJ's finding is not supported by substantial evidence. Rec. Doc. 18 at 11. Specifically, Dillon argues that the RFC assessment by Dr. Scardino, which was given "great weight," was not supported by direct medical evidence. *Id*. Rather, Dillon contends that the ALJ discounted substantial evidence of the severity of Dillon's diseases, the aggressive treatment Dillon received, the severe side effects of her weight gain, and the complications resulting from her diabetes mellitus. *Id*. at 13. Additionally, Dillon argues

16

that the ALJ disregarded Social Security Ruling 96-8p, which requires the ALJ to consider all of the relevant evidence in the record when determining the RFC. *Id.* at 12. Specifically, Dillon argues that the objective medical evidence, lay evidence from herself and her pastor, and the new medical evidence provided by Dr. Gauthier constitute substantial evidence that Dillon was limited to a less-than-sedentary RFC. *Id.* at 13.

Substantial evidence supports the ALJ's decision. Dillon first argues that the ALJ "discounted the substantial evidence of the severity of her disease, aggressive treatment she received, severe side effects of her weight gain, and complications of her diabetes mellitus due to her chronic steroid therapy." Rec. Doc. 18 at 13. However, it is clear that the ALJ did not discount all of the above complaints when making his final determination. First, the ALJ "more than adequately accounted" for Dillon's Level III obesity when determining her RFC. Rec. Doc. 13-2 at 71. The ALJ relied upon Dillon's body mass index of 52 and her weight of 354 pounds, which were both recorded on July 29, 2013 by Oscar Mendez, M.D., a treating primary care physician, and her testimony where she stated her weight ranges from a little under 300 to 360 pounds. *Id* at 70-71*.* The ALJ then considered Dillon's diabetes mellitus and associated symptoms. *Id.* at 71-72. Additionally, the ALJ considered Dillon's aggressive treatment by reviewing rheumatology records that show she was prescribed prednisone at nearly all of

her near-monthly follow-ups with specialists and Dillon's own testimony which the ALJ found to suggest that the steroid medications were effective in controlling her disease. *Id.* at 72. Furthermore, the ALJ noted Dillon's blood pressure was well-managed on August 2, 2013, her serum glucose was within normal limits when tested on September 13, 2013 (which were similar to tests from one year before), and rheumatology records showed that during her follow-ups with specialists in 2012 and 2013 Dillon had a normal review of symptoms including no reported constitutional symptoms on a consistent basis. *Id.* at 71-72.

The evidence that the ALJ relied upon is sufficient for a reasonable mind to find that the ALJ did not discount the substantial evidence of the severity of Dillon's conditions. Therefore, the ALJ's finding was based on substantial evidence. Additionally, all of the allegedly discounted evidence was included in Dr. Scardino's RFC assessment. Rec. Doc. 13-3 at 30.

Dillon then argues that the objective medical evidence, lay evidence, and new medical evidence constitute substantial evidence that Dillon was limited to a less-than-sedentary RFC. Rec. Doc. 18 at 13. In this case, the ALJ explained that Dillon's testimony was to be considered as only partially credible because her allegations concerning the intensity, persistence, severity, and limiting effects of her symptoms were not supported by the medical evidence to the extent alleged. Rec. Doc. 13-2 at 73. Additionally, the ALJ

18

found the pastor's testimony to have little weight. *Id.* The ALJ is responsible for evaluating the credibility of witnesses (*Masterson*, 309 F.3d at 272), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make'" (*Spruill v. Astrue,* 299 F. App'x. 356, 358 (5th Cir. 2008) (quoting *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994)). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. *McKnight v. Astrue,* 340 F. App'x. 176, 181 (5th Cir. 2009) (citation omitted). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. *Falco,* 27 F.3d at 163-64. Because this Court gives great deference to the ALJ regarding credibility, there is no reason to overturn. Accordingly, this objection is overruled.

Dillon's objections do not demonstrate any error with the Magistrate Judge's Report. Dillon's first objection is meritless because Dillon failed to satisfy the material and good cause inquiries. Dillon's second objection is meritless because the ALJ's findings are supported by substantial evidence.

New Orleans, Louisiana, this 12th day of May, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE